Redacted (Public Filed Version)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRIARCH PARTNERS, LLC,

               Plaintiff,

vs.

AXIS INSURANCE COMPANY,

            Defendant.

Civil Action No. 1:16-cv-02277 (VEC)

## MEMORANDUM OF LAW IN OPPOSITION TO
## <u>AXIS INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT</u>

Finley T. Harckham, Esq.
Luma Al-Shibib, Esq.
Nicholas R. Maxwell, Esq.
Anderson Kill P.C.
1251 Avenue of the Americas
New York, New York  10020
Telephone:  212-278-1000
fharckham@andersonkill.com
lal-shibib@andersonkill.com
nmaxwell@andersonkill.com

*Attorneys for Plaintiff*
  *Patriarch Partners, LLC*

# <u>TABLE OF CONTENTS</u>

**Page**

I.    PRELIMINARY STATEMENT ..................................................................... 1

II.    COUNTER STATEMENT OF FACTS ....................................................... 3

III.    ARGUMENT ................................................................................................... 9

    A.    AXIS BEARS A HEAVY BURDEN OF PROOF TO DEMONSTRATE THAT AN EXCLUSION APPLIES TO BAR PATRIARCH'S CLAIM ............. 9

    B.    AXIS'S ARGUMENT THAT THE CLAIM AT ISSUE SHOULD BE DEEMED MADE BEFORE ITS POLICY PERIOD IGNORES THE RELEVANT FACTS AND INSURANCE POLICY PROVISIONS ................. 10

        1.    AXIS Cannot Rely on an Interrelated Claims Provision Because It Expressly Was Deleted from the CNA Policy by Endorsement .............. 10

        2.    AXIS Cannot Rely on the "When a Claim is Deemed Made" Provision in the CNA Policy Because the "When a Claim Is Deemed Made" Provision in the AXIS Policy Controls ......................... 11

        3.    No Claim Was Made Before the SEC Subpoena in February, 2012 ....... 13

            (a)    No Claim Was Asserted on July 1, 2011 ..................................... 13

            (b)    No Claim Was Asserted in June, 2011 ........................................ 17

            (c)    No Claim Was Asserted in December, 2009 ............................... 20

    C.    PATRIARCH'S CLAIM IS NOT BARRED BY ANY "PENDING AND PRIOR" EXCLUSION ................................................................................... 21

    D.    PATRIARCH'S CLAIM IS NOT BARRED UNDER THE WARRANTY ....... 23

IV.    CONCLUSION ............................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*34th Ave. Apt. Corp. v. Nationwide Mut. Ins. Co.*,
  283 A.D.2d 604 (2d Dep't 2001) ..........................................................16

*Biochemics, Inc. v. AXIS Reinsurance Co.*,
  83 F. Supp. 3d 405, 406 (D. Mass. 2015) ........................................19, 20

*Broad Street, LLC v. Gulf Ins. Co.*,
  37 A.D.3d 126 (1st Dep't 2006) ...........................................................20

*CheckRite Ltd. v. Illinois Nat'l Ins. Co.*,
  95 F. Supp. 2d 180 (S.D.N.Y. 2000).....................................................12

*Cont'l Cas. Co. v. Rapid-American Corp.*,
  80 N.Y.2d 640 (1993) ............................................................................9

*Crouse W. Holding Corp. v. Sphere Drake Ins. Co., PLC*,
  248 A.D.2d 932, *aff'd*, 707 N.E.2d 435 (1998) ...................................22

*Diamond Glass Cos. v. Twin City Fire Ins. Co.*,
  06-cv-13105 (BSJ) (AJP), 2008 U.S. Dist. LEXIS 86752 (S.D.N.Y. Aug. 18, 2008) ...........14

*Employers' Fire Ins. Co. v. Promedica Health Sys.*,
  No. 12-3104, 524 F. App'x 241, 2013 U.S. App. LEXIS 8943..............................18

*Gateway, Inc. v. Gulf Ins. Co.*,
  Case No. 10-cv-1720-WQH-JMA, 2011 U.S. Dist. LEXIS 91063 (S.D. Cal. Aug. 15, 2011) ...........................................................20

*In re September 11th Liab. Ins. Coverage Cases*,
  458 F. Supp. 2d 104 (S.D.N.Y. 2006)....................................................21

*MBIA Inc. v. Federal Insurance Co.*,
  652 F.3d 152 (2d Cir. 2011).................................................17, 18, 19, 20

*McCormick & Co., Inc. v. Empire Ins. Grp.*,
  878 F.2d 27 (2d Cir. 1989).....................................................................9

*Medical Mutual Ins. Co. v. Indian Harbor Ins. Co.*,
  583 F.3d 57 (1st Cir. 2009)......................................................15, 16, 17

*MusclePharm Corp. v. Liberty Ins. Underwriters Inc.*,
  15-cv-00555-REB-KMT, 2016 U.S. Dist. LEXIS 168698 (D. Colo. Aug. 4, 2016) ..............18

ii

*National Stock Exchange v. Federal Insurance Co.*,
   06C 1603, 2007 U.S Dist. LEXIS 23876 (N.D. Ill. Mar. 30, 2007) .......................................19

*Office Depot v. Nat'l Union Fire Ins. Co.*,
   734 F. Supp. 2d 1304 (S.D. Fla. 2010) ...............................................................................18

*Quanta Lines Ins. Co. v. Investors Capital Corp.*,
   06 Civ. 4624 (PKL), 2009 U.S. Dist. LEXIS 117689 (S.D.N.Y. Dec. 17, 2009), *aff'd sub nom*, *Quanta Specialty Lines Ins. Co. v. Investors Capital Corp.*, 403 F. App'x.
   530 (2d Cir. 2010)........................................................................................................24

*RSUI Indem. Co. v. Desai*,
   8:13-cv-2629-T-30TGW, 2014 U.S. Dist. LEXIS 122068, *12 (M.D. Fla. Sept. 2, 2014) ...........................................................................................................................16

*Seaboard Surety Co. v. Gillette Co.*,
   64 N.Y.2d 304 (1984) ...............................................................................................9, 24

*Unigard Ins. Co v. Leven*,
   983 P.2d 1155 (Wash. Ct. App. 1999) ..............................................................................14

*University of Pittsburgh v. Lexington Insurance Co.*,
   13-cv-335, 2016 U.S. Dist. LEXIS 170285 (S.D.N.Y. Dec. 8, 2016) ..................................24

*Vella v. Equitable Life Assur. Soc.*,
   887 F.2d 388 (2d Cir. 1989)...........................................................................................24

*Weaver v. AXIS Surplus Ins. Co.*,
   Case No. 14-4180-cv, 639 F. App'x 764, 2016 U.S. App. LEXIS 4199 (2d Cir. March 7, 2016) ............................................................................................................22, 23

*Westview Assocs. v. Guar. Nat'l Ins. Co.*,
   95 N.Y.2d 334 (2000) ..............................................................................................12, 24

OTHER AUTHORITIES

11 N.Y.C.R.R. § 73.3(a) ....................................................................................................12, 20

2003 NY Insurance GC Opinions LEXIS 225……………………………………………...12

NYS Register, Insurance Dept. Rule Making Activities, at 10 (May 5, 1993)…..........................12

## I.    PRELIMINARY STATEMENT

AXIS's motion should be denied for several reasons. First, it completely ignores the relevant provisions of the insurance AXIS sold to Patriarch, and the factual and legal bases of Patriarch's claims. Instead it presents a misleadingly incomplete and irrelevant set of facts and applies them to policy provisions which have no bearing upon this dispute. In this way AXIS creates an alternative reality, which is the only way in which it can posit a seemingly credible argument for summary judgment.

AXIS's first argument, that the Claim should be deemed made in June of 2011, is based upon the mistaken notion that the SEC asserted a related claim at that time against a former Patriarch employee, ████████ when it served a subpoena upon him after issuing a non-public Order of Investigation directed not at him, but at Patriarch.  However, the SEC never asserted a Wrongful Act against ████████ and sought only his voluntary cooperation. AXIS fails to address the fact that the subpoena to ████████ was issued only at the request of his counsel, not because he refused to cooperate, but rather because his counsel thought it would be more appropriate to have a formal request for the file since he was being asked to produce materials in his personal possession relating to his former employer.  In that regard, Patriarch fully complied with all document requests from the SEC and had no objection to ████████ producing whatever materials were requested from him.  It defies logic to consider such an interaction a "Claim," particularly since ████████ was never a target of the SEC investigation.

AXIS's alternative argument, that the Claim should be deemed made in 2009, is based upon an equally significant omission.  AXIS asserts that the Claim was made as early as December, 2009, when the SEC sent an informal request to Patriarch for the voluntary production of information and included Form 1662. AXIS posits that the inclusion of Form 1662, which is routinely sent by the SEC with all of its information requests, triggered a clause under

the primary CNA Policy which purports to dictate when a Claim is "deemed made." However, AXIS conveniently ignores the language of its own policy, which says that a Claim is deemed made when reported to AXIS - a clause that clearly does not follow the provision in the CNA Policy. It also ignores New York law, which governs not only the AXIS Policy, but the CNA Policy as well.  Like the AXIS Policy, New York law dictates that a Claim is deemed made when reported to the insurer.  Even if the AXIS Policy did not contain its own operative clause, the CNA policy provision would be unenforceable in this case under that controlling law. Further, AXIS misrepresents the CNA provision as eliminating the requirement of that policy that for a Claim to be covered it must allege a "Wrongful Act" by the Insured, when in fact it does no such thing.

Next, AXIS argues that coverage is barred under the "Pending and Prior Claim" exclusion in its policy, again conveniently ignoring the relevant facts and insurance provisions. Patriarch amended its complaint to make clear its allegation that the "pending and prior" provision in the AXIS Policy does not apply to this Claim because it is inconsistent with the AXIS Binder. The binder is the controlling contract of insurance because only it, and not the policy, had been issued at the time Patriarch noticed the Claim (by sending a copy of the February, 2012, SEC Subpoena) to its insurers.  AXIS cannot dispute that.  So, instead it ignores the inconsistency between the binder and the policy and defines the issue as simply whether the policy provision applies to the facts.  Then, it again distorts the record to suit its needs, including the erroneous characterization that the SEC asserted a Claim against █████████and the grossly inaccurate statement that the SEC had made multiple document "demands" upon Patriarch prior to the policy period. In fact, the SEC made no demands upon anyone, and no accusations of wrongdoing against anyone, before the AXIS Policy period. To the contrary, the SEC made clear

to Patriarch and to ███████ that it was seeking only their voluntary cooperation, and explicitly told Patriarch it was making no allegations of wrongdoing.

Finally, AXIS argues that coverage is barred under the Warranty provided to it that no officer or director of Patriarch was aware of any facts or circumstances that were reasonably likely to give rise to a claim under the AXIS Policy. AXIS makes no effort to refute Patriarch's interpretation that the Warranty applies only to circumstances that would reasonably be expected to result in claims that exceed the $20 million in limits underlying the AXIS Policy. Instead, it simply states that a claim already existed "within the meaning of the CNA Policy" and that the SEC was clearly preparing further action against Patriarch. Thus, yet again AXIS ignores the real issue in dispute and fails to establish any basis upon which the Court could rule that the Warranty applies as a matter of law. AXIS's motion for summary judgment therefore should be denied in its entirety.

## II. COUNTER STATEMENT OF FACTS

Rather than restating facts Patriarch already presented to the Court in its own summary judgment submission (ECF Nos. 96-103), Patriarch incorporates by reference the Statement of Facts in its Memorandum of Law in Support of its Motion for Partial Summary Judgment ("Patriarch MOL") (ECF No. 97) and its Rule 56.1 Statement of Undisputed Facts ("Patriarch SOF") (ECF No. 98), as if fully set forth herein, and addresses below certain factual mischaracterizations asserted in AXIS's Memorandum of Law in Support of its Motion for Summary Judgment ("AXIS MOL") (ECF No. 105).[1]

---

[1] The numerous factual inaccuracies in AXIS's Rule 56.1 Statement of Facts ("AXIS SOF") (ECF No. 107) are addressed in Patriarch's Response to AXIS's Rule 56.1 Statement of Facts (hereinafter "Response to AXIS SOF"), filed contemporaneously herewith.

3

Contrary to AXIS's characterizations attempting to depict a large-scale SEC investigation of Patriarch that had escalated by May, 2011 (AXIS MOL at 3), the SEC – in its own words – described its activities in late May, 2011, as an "informal investigation" in its "early stages."  Patriarch SOF ¶ 172; Al-Shibib Aff. Ex. 61.[2]  In fact, over the course of more than two years, the SEC sent only five letters requesting information from Patriarch, at sporadic intervals – often with six-month gaps, seeking Patriarch's voluntary cooperation.  Patriarch SOF ¶¶155-165.  Neither Ms. Tilton, Patriarch's CEO, nor Susan Brune, Patriarch's outside counsel handling the requests, could discern whether the SEC had a specific focus of inquiry.  Al-Shibib Aff. Ex. 56 at 34-35; Al-Shibib Aff. II Ex. 1 at 15-18, Ex. 3 at 94-95.[3]  In fact, the SEC's requests appeared to Ms. Tilton as a "fishing expedition," and she believed that once Patriarch answered all the SEC's questions, it would "go away."  Al-Shibib Aff. II Ex. 3 at 95.

The meeting referred to repeatedly by AXIS as a "proffer" (AXIS MOL at 1, 7, 8, 22) was never characterized, viewed, described, or discussed as a "proffer" by either Patriarch or its counsel.  Response to AXIS SOF ¶ 38.  In fact, that meeting, which occurred on July 5, 2011, between Brune & Richard attorneys and SEC staff, was requested by Ms. Brune and was viewed by Patriarch's counsel as an "introductory meeting" to discuss Patriarch.  *Id.*

AXIS argues that the Order of Investigation, issued by the SEC in June, 2011, before the July 31, 2011 policy inception date, constitutes a Claim under the policy.  Notably, however, the Order of Investigation – a non-public document – was not served on Patriarch.  Patriarch SOF ¶¶ 167-168.  Ms. Tilton was not aware that it had been issued.  *Id.* at ¶ 170.

---

[2] Citations to "Al-Shibib Aff. Ex. ___" refer to exhibits attached to the Affidavit of Luma Al-Shibib, sworn to on January 24, 2017 (ECF No. 103).

[3] Citations to "Al-Shibib Aff. II Ex. ___" refer to exhibits attached to the Affidavit of Luma Al-Shibib, sworn to on February 24, 2017, filed contemporaneously herewith.

AXIS emphasizes the SEC's interactions with two former Patriarch employees, in the summer of 2011, in an effort to show that the SEC had commenced a "formal" investigation and that Patriarch had knowledge of this.  Critically, however, the SEC contacted both ███ ██████ and ███████████ for voluntary cooperation.  Patriarch SOF ¶¶ 171-181.  The SEC contacted ████████ before it issued the Order of Investigation, referring to its activities as an "informal" investigation that was in its information gathering stage.  *Id*. at ¶¶ 171-172; Al-Shibib Aff. Ex. 61.  Likewise, ████████ was contacted in early June, 2011, to voluntarily provide documents and be interviewed.  Patriarch SOF ¶ 177.  ██████████ agreed to cooperate – but his counsel requested that the SEC serve a subpoena for the documents – a request with which the SEC complied.  *Id*. at ¶¶ 178-179.  █████████ and ██████████ were not targets of the SEC and had no further involvement with the matter beyond their cooperation in the summer of 2011.  *Id*. at ¶¶ 175, 176, 180, 181.  Neither testified at trial and neither was named as a defendant in the enforcement action the SEC commenced against Patriarch and Ms. Tilton in 2015.  *Id*.  While ██████████ and ██████████ were assisted by legal counsel in responding to the SEC requests, AXIS's characterization of their legal counsel as "defense" counsel is misleading and inaccurate since neither was ever the subject of any allegations of wrongdoing.[4]  AXIS MOL at 1, 5, 6, 22.

Moreover, AXIS's characterization of the August 11, 2011 email from the SEC as providing Patriarch with a "warn[ing] that another formal subpoena was coming" is both irrelevant, because an indication that a subpoena will be issued is not a claim, and also misstates the contents of that communication.  AXIS MOL at 1, 7.  That email stated that the SEC "will follow this voluntary request with a subpoena that may seek more information.  We hope to use

---

[4] Notably, because it did not believe that there was a Claim prior to the February, 2012 SEC Subpoena, Patriarch did not submit to its insurers either its own legal fees incurred prior to 2012 or the legal fees incurred by ██████████ and ██████████ in 2011 in responding to the SEC.  *See* Al-Shibib Aff. II Ex. 5 at 136, 208-209.

the information that you provide to limit the subpoena." Patriarch SOF ¶ 183. The email did not indicate when the SEC intended to issue any subpoena to Patriarch – indicating only that a subpoena might be issued at some unspecified point in the future – and suggested that a subpoena might not be needed if Patriarch continued to provide information voluntarily. *Id*. at ¶ 184. Given the sporadic nature of the SEC's communications and the gaps of several months between such communications, it was impossible for Patriarch to know if a subpoena would be issued at all, and if so, whether it would even be issued in the next year. Also, the email makes no reference to any previously issued subpoena. At the time, Ms. Tilton was not aware that a subpoena had been issued to ███████ – albeit at his request. *Id*. at ¶ 187. Additionally, Ms. Tilton did not recall reading about the reference to a possible subpoena in the August 11, 2011 SEC email or discussing it with her counsel. Patriarch SOF ¶¶ 185-186.

Beginning with the December, 2009, inquiry letter until Patriarch received the SEC Subpoena on February 27, 2012, all its interactions with the SEC were voluntary. Patriarch SOF ¶¶ 188-190. During that period of time, Patriarch incurred under $400,000 in legal fees responding to the SEC requests. *Id*. at ¶ 203. And Patriarch had over ███████ available in policy limits under its July 31, 2010-July 31, 2011 policies that it could have used if there had been a Claim in 2011 prior to July 31, 2011 when the AXIS Policy incepted. *Id*. at ¶ 201.

In addition, AXIS's suggestion that Patriarch purposely concealed the SEC's inquiries from its insurance broker and from AXIS is not supported by the evidence in the record. AXIS's reliance upon the deposition testimony of Stephen Blount of Willis in response to a hypothetical question as to whether SEC investigations are the type of information that should be disclosed to a policyholder's insurance broker is misplaced. AXIS MOL at 8. First, neither Willis nor any of Patriarch's insurance carriers – including AXIS – ever asked Patriarch

6

if it had been contacted by the SEC, and, Patriarch had no duty to volunteer this information

unless it was specifically requested.  Moreover, Patriarch's in-house counsel did consult

Patriarch's insurance broker – specifically reaching out to Robert Siegel of Willis, in September,

2011, as soon as she was informed by Patriarch's outside counsel that the SEC might issue a

subpoena at some point in the future.  Patriarch SOF ¶¶ 204-205; Richeimer Dec. Ex. 61.  Ms.

Tilton was not aware of any intent on the part of the SEC to issue a subpoena and did not know

about the Order of Investigation.  Patriarch SOF ¶¶ 170, 185-191.

Notably, Ms. Tilton did not believe the SEC had escalated its inquiry into a

formal investigation – she believed that the SEC would "go away."  Patriarch SOF ¶ 30.  At the

time that the 2011-2012 Policies were being underwritten, Ms. Tilton did not believe that any

Claim would result from the SEC's requests and certainly not one that would exceed $20 million.

*Id*. at ¶¶ 31-32.  The SEC's communications advised Ms. Tilton that the matter was

"confidential," and as she had customarily done with other legal matters, she referred it to her

outside counsel, Brune & Richard.  Response to AXIS SOF ¶¶ 45-46.  Ms. Tilton advised her in-

house counsel, Jennifer Gaines, of the SEC inquiry with instructions to fully cooperate with any

Brune & Richard requests.  *Id*.  Ms. Tilton did not conceal the fact of the inquiry from Carolyn

Schiff, Patriarch's Vice-President of Litigation, as AXIS suggests.  AXIS MOL at 8, n.4.  Ms.

Schiff was new at the company, joining at the end of 2010, in a newly-created position.

Response to AXIS SOF ¶¶ 46-46.  It took time for her to become integrated into the company

and for her role and duties to become defined.  *Id*.

Additionally, AXIS's vague accusation that Patriarch withheld information for

"years" during the claims investigation also is without merit.  AXIS MOL at 12, n. 5.  AXIS

makes this accusation without any supporting record citation and does not identify the

information that it alleges Patriarch failed to timely provide.  In any event, AXIS was invited to participate in all the telephone calls Patriarch and/or its outside counsel regularly conducted with the D&O carriers as to the status of the SEC matter, and Patriarch included AXIS on the email communications it regularly sent out to the carriers with updated information.  Patriarch SOF ¶ 209.  AXIS had the opportunity then to request any information it wanted.  In fact, when Patriarch advised AXIS that the underlying carrier's limits had been exhausted and asked AXIS to assume its defense obligation in August, 2015, AXIS then did request a substantial number of documents and information to conduct its investigation, and Patriarch promptly complied with that request.  *Id*. at ¶ 210-211.

Finally, the implication that Patriarch pursued the additional AXIS Policy limits to obtain more coverage for what it knew would be a claim for the SEC matter also is not supported by the record.  AXIS MOL at 2-3.  Patriarch did not seek the additional policy limits; the idea was suggested by Willis, and AXIS actively pursued the Patriarch account, bidding on every layer of coverage.  Patriarch SOF ¶¶ 21-22, 33.  Patriarch only agreed to purchase the policy because of its competitive price and because of unknown potential compliance issues that could arise as a result of the Dodd-Frank Act.  *Id*. at ¶¶ 23-25.  Indeed, Patriarch's decision to purchase the AXIS Policy had nothing to do with any pending or anticipated claims. Patriarch SOF ¶¶ 26-32.  Certainly, AXIS could have inquired into any existing circumstances and specifically about whether Patriarch had been contacted by the SEC.  *Id*. at ¶¶ 34-42.  AXIS did not do so, and cannot place blame for that failure on Patriarch.

8

III.    **ARGUMENT**

A.    **AXIS BEARS A HEAVY BURDEN OF PROOF TO DEMONSTRATE THAT AN EXCLUSION APPLIES TO BAR PATRIARCH'S CLAIM**

Patriarch has demonstrated that the SEC Claim was made during the July 31, 2011-July 31, 2012 Policy Period.  The SEC Subpoena was served on Patriarch on February 27, 2012.  Patriarch, through its broker, promptly provided notice of the SEC Subpoena to its D&O carriers on March 5, 2012 – during the Policy Period.  CNA accepted the SEC Subpoena as a Claim under its July 31, 2011-July 31, 2012 policy.  AXIS MOL at 11.  So did the other insurers.  Patriarch SOF ¶¶ 206-208 (all of Patriarch's D&O insurance carriers have acknowledged that the SEC Subpoena qualifies as a "Claim").  AXIS adopted the coverage position of CNA, that the SEC Subpoena is a Claim.  AXIS MOL at 12; Al-Shibib Aff. Ex. 49.  Indeed, AXIS does not base its denial on the fact that the SEC Subpoena is not a Claim, but rather on its contention that a Claim arose prior to policy inception and coverage for the SEC Subpoena is barred under policy exclusions for pre-policy Claims.  None of these facts is disputed.  Accordingly, Patriarch has satisfied its burden of demonstrating that the SEC Subpoena constitutes a Claim under the AXIS Policy.  *See* Patriarch MOL at 12-13.

Where, as here, AXIS does not dispute that the SEC Subpoena constitutes a Claim, but instead, seeks to invoke policy exclusions as a basis to deny coverage, it – and not Patriarch – has the burden of proving that the exclusions, which must be interpreted strictly and narrowly in favor of coverage, apply.  *McCormick & Co., Inc. v. Empire Ins. Grp.,* 878 F.2d 27, 30 (2d Cir. 1989) ("Once the insured shows that a [covered] loss has occurred, the insurer shoulders the burden of demonstrating that the loss claimed is excluded expressly from coverage under the policy terms"); *Cont'l Cas. Co. v. Rapid-American Corp.,* 80 N.Y.2d 640, 654 (1993) ("Where contamination could occur in a variety of ways, only one of which is potentially

9

excluded, [the insurer] cannot meet the heavy burden of showing that the exclusion applies in the particular case and is subject to no other reasonable interpretation"); *see also Seaboard Surety Co. v. Gillette Co.*, 64 N.Y.2d 304, 311 (1984).  The insurer's burden of proof to demonstrate that an exclusion applies is a "heavy" one.  *Rapid-American,* 80 N.Y.2d at 654.  As discussed below, AXIS's arguments do not satisfy its heavy burden of proof.  Accordingly, AXIS's motion should be denied.

> **B.      AXIS'S ARGUMENT THAT THE CLAIM AT ISSUE SHOULD BE DEEMED MADE BEFORE ITS POLICY PERIOD IGNORES THE RELEVANT FACTS AND INSURANCE POLICY PROVISIONS**

AXIS argues that the SEC Subpoena should be treated as a single claim with what it alleges is an "interrelated claim" that was made prior to July 31, 2011 policy inception.  AXIS argues further that the SEC Subpoena should be deemed first made when the earlier pre-policy interrelated claim occurred.  AXIS relies on two provisions in the CNA Policy – neither of which applies.  AXIS argues that under the CNA Policy, a claim is deemed first made when written notice of an order of investigation or Form 1662 is received by an Insured.  AXIS argues that such notice was received in this case prior to July 31, 2011, and contends that a claim therefore was made before policy inception.  AXIS also argues that the SEC Subpoena, a claim that arose during the AXIS Policy Period, is related to the pre-policy claim, and further that, based on an "interrelated claims" provision allegedly contained in the CNA Policy, the SEC Subpoena should be treated as a single claim with the pre-policy claim, made when the pre-policy claim was made – meaning prior to July 31, 2011.  AXIS's arguments fail as a matter of law.

> 1.      AXIS Cannot Rely on an Interrelated Claims Provision Because It Expressly Was Deleted from the CNA Policy by Endorsement

AXIS admits that the SEC Subpoena is a Claim, but argues that the SEC Subpoena is related to a Claim that predates policy inception.  AXIS MOL at 11-12, 14, 18 n. 7.

AXIS attempts to invoke an "Interrelated Claims" provision in the CNA Policy, as a basis to argue that the SEC Subpoena is interrelated to a prior Claim "involving the same Wrongful Act or Interrelated Wrongful Acts" that was first made before July 31, 2011.  AXIS MOL at 17-18, and at 18 n. 7; *see also* Al-Shibib Aff. Ex. 4, CNA Policy § VI.E. at PP3367.  AXIS argues that "the SEC investigation and all subsequent proceedings…, are a single Claim made before the policy period and not covered under the AXIS Policy."  AXIS MOL at 18.

AXIS's argument ignores the fact that the Interrelated Claims provision was deleted "in its entirety" by Endorsement 4 to the CNA Policy.  Al-Shibib Aff. Ex. 4, CNA Policy End. 4, ¶ 7 at PP3381-3382.  Thus, even if AXIS could demonstrate that a Claim arose prior to Policy inception "involving the same Wrongful Act or Interrelated Wrongful Acts" as the SEC Subpoena – which, as discussed below, it cannot – the SEC Subpoena cannot be treated as a single Claim with a pre-policy claim (and therefore cannot be deemed made when the pre-policy claim was made) because the Interrelated Claims provision in the CNA Policy was deleted by endorsement.  Without that provision to rely upon, AXIS's argument fails on its merits.

2.  AXIS Cannot Rely on the "When a Claim is Deemed Made"
Provision in the CNA Policy Because the "When a Claim Is
Deemed Made" Provision in the AXIS Policy Controls

A provision in the CNA Policy provides that a Claim is deemed made when the Insured receives written notice of, among other things, an order of investigation or Form 1662.  Al-Shibib Aff. Ex. 4, CNA Policy § VI.D.4. at PP3367.  AXIS relies on this provision to argue that a Claim was first made prior to policy inception when Patriarch first received Form 1662 in a December, 2009 informal inquiry letter from the SEC or in June, 2011, when a former employee's counsel requested a copy of the SEC's Order of Investigation.  Not only do neither of these occurrences satisfy the definition of a Claim (discussed *infra*), but AXIS cannot rely on the "when a claim is deemed made" provision in the CNA Policy because the AXIS Policy has

11

its own "when a claim is deemed made" provision and does not follow the one in the CNA

Policy.  Al-Shibib Aff. Ex. 4, AXIS Policy, New York Amendatory Endorsement, § II.B. at

PP3424.  AXIS conspicuously ignores this fact.  The AXIS Policy expressly states that a Claim

is deemed made when it is reported to the insurer.  *Id.*; SOF ¶ 15.  Thus, under the AXIS Policy,

the Claim is deemed made when the insurance companies first received written notice of the

SEC Subpoena in March, 2012.  AXIS's argument reads out of the AXIS Policy the provision

expressly stating that a claim is deemed first made when it is reported to the insurance company,

and therefore, it must be rejected.  *Westview Assocs. v. Guar. Nat'l Ins. Co.*, 95 N.Y.2d. 334, 339

(2000) (rejecting insurer's interpretation that rendered provisions without effect).

Moreover, the "when a claim is deemed made" provision in the CNA Policy

conflicts with controlling New York law, and does not apply.  11 N.Y.C.R.R. 73.3(a) (for

claims-made policies, New York law requires that a claim is deemed made when written notice

is received by the insurance company); *see also* 2003 NY Insurance GC Opinions LEXIS 225

(affirming same); NYS Register, Insurance Department Rule Making Activities, dated May 5

1993, at 10 (same); Patriarch MOL at 16.  AXIS, therefore, cannot invoke the "when a claim is

deemed made provision" in the CNA Policy to argue that a pre-policy Claim was made when

Patriarch received Form 1662 in December, 2009, or when ███████ counsel requested and

received a copy of the Order of Investigation in June, 2011.[5]

_____

[5] *CheckRite Ltd. v. Illinois Nat'l Ins. Co.*, 95 F. Supp. 2d 180, 193 n.9 (S.D.N.Y. 2000), a case relied on by AXIS, does not support its argument.  That case involved a policy issued to California and Colorado insureds.  The underlying claim in *CheckRite*, a lawsuit in California, was held to have been deemed first made when the complaint was filed against the insureds.  *Id.* at 193 n.9, 196.  In so holding, the court relied on a provision in the policy that a claim is deemed first made when it is filed against the insured. *Id.* at 196.  Unlike the AXIS Policy here, the *CheckRite* Policy did not contain a New York Amendatory Endorsement providing that a claim is deemed first made when notice is received by the insurance company, as required by controlling New York law.  *Id.*

3.      No Claim Was Made Before the SEC Subpoena in February, 2012

Apart from relying on an interrelated claims provision that was expressly deleted from the CNA Policy and conspicuously ignoring the "when a claim is deemed made" provision in the AXIS Policy and the requirements of New York law, AXIS's argument fails because it cannot demonstrate the existence of a Claim prior to policy inception.  In this regard, AXIS argues that a Claim first arose: (1) on July 1, 2011, when the SEC served a document subpoena on ███████ expressly at his request after the SEC had sought his voluntary cooperation and he had agreed to comply; (2) in June, 2011, when the SEC issued the non-public Order of Investigation and when it was requested and reviewed by ███████ counsel; or (3) in December, 2009, when the SEC sent Form 1662 to Patriarch with a letter requesting voluntary cooperation in connection with an informal inquiry.  AXIS MOL at 17-18.  AXIS is wrong on all counts.  There was no Claim made prior to the SEC Subpoena of February 2012.

(a)      No Claim Was Asserted on July 1, 2011

AXIS's reliance upon the subpoena served on ███████ to justify its denial of coverage is misplaced.  There was no "Claim" made against ███████.  *See* Patriarch MOL at 17-18.  A Claim is a "written demand for monetary damages or non-monetary relief" alleging a Wrongful Act against an Insured or a "formal investigation" against an Insured alleging a Wrongful Act.  Al-Shibib Aff. Ex. 4, CNA Policy at PP3352.  Assuming *arguendo* that ███ ███████ qualifies as an Insured under the AXIS Policy, it is undisputed that there was no "formal investigation" against ███████  He was not a target or focus of the SEC's inquiries and had no further participation after his initial contact with the SEC in 2011.  Patriarch SOF ¶¶ 180-181. The subpoena to ███████ therefore, was not part of a "formal" Investigation against him and

does not qualify as a Claim under that portion of the definition of Claim.[6]  Therefore, to be a claim, the subpoena to ███████ would have to constitute a "written demand" for "nonmonetary relief" against him alleging a Wrongful Act.  The subpoena served on ███████ does not meet this definition for several reasons.

First, the subpoena served on him is not a "written demand" against him.  The subpoena was for information gathering purposes, and was served at ███████ request after the SEC contacted him for voluntary cooperation.  Patriarch SOF ¶¶ 177-179.  The case *Diamond Glass Cos. v. Twin City Fire Ins. Co.*, 06-cv-13105 (BSJ) (AJP), 2008 U.S. Dist. LEXIS 86752, \*11-\*12 (S.D.N.Y. Aug. 18, 2008), involving AXIS as the excess D&O insurer, is instructive.  In *Diamond Glass*, the court held that grand jury subpoenas for corporate documents and information issued to the corporation's custodian of records and employees within the IT department, did not qualify as "demands for non-monetary relief" and did not constitute a Claim under the corporation's D&O policies.  *Id*. at \*12.  The court reasoned that to hold otherwise would lead to an "absurd result" of transforming "any investigative subpoena" into an insurable claim "notwithstanding the absence of any assertion of civil or criminal liability."  *Id*. at \*12.  The court declined to adopt such an approach because it would effectively require D&O policies to serve as a "means of holding insureds harmless from costs associated with any participation in the legal system."  *Id*. at \*12-\*13.

In addition, where an insured voluntarily cooperates, as ███████ agreed to do in response to the SEC's requests, there can be no demand that rises to the level of a Claim.  *See, e.g., Unigard Ins. Co v. Leven*, 983 P.2d 1155, 1160 (Wash. Ct. App. 1999) (holding that

---

[6] AXIS notes that a Claim also is defined to include an "administrative or regulatory proceeding."  AXIS MOL at 14.  An administrative or regulatory proceeding was commenced by the SEC against Patriarch and Ms. Tilton in March, 2015 (Patriarch SOF ¶ 193), but no such proceeding was ever commenced against ███████ nor could one have existed against him in 2011.

14

because the president of a company was not named as a defendant in an action, the costs he incurred in voluntarily participating in the defense of that action – in order to protect his personal interests – were not covered under the policy)  Here, ███████ was contacted for voluntary cooperation, and asked for the subpoena after agreeing to cooperate.  Patriarch SOF ¶¶ 177-179. Further, Patriarch cooperated with all SEC requests and informed the SEC that it did not object to the SEC contacting former employees, like ███████  Al-Shibib Aff. Ex 56 at 30-32; Al-Shibib Aff. II Ex. 8.  Thus, the subpoena received by ███████ is not a demand that constitutes a Claim under the AXIS Policy.

To hold otherwise effectively would "allow an insured to manufacture coverage" – something that courts have rejected as nonsensical and absurd.  *Medical Mutual Ins. Co. v. Indian Harbor Ins. Co.*, 583 F.3d 57, 63 (1st Cir. 2009).  For example, in *Medical Mutual*, where the court held that an action commenced only against the corporation and not against the insured directors and officers was not a covered claim, the court rejected the corporation's argument that a settlement of the underlying action releasing the company's directors and officers from liability constituted an admission that the action asserted a claim against the insured directors and officers.  583 F.3d at 64.  The court stated: "It would make no sense to allow an insured to manufacture coverage by the simple expedient of insisting, as a condition of settlement, that a plaintiff frame a release more broadly than the plaintiff had framed the claim actually made."  *Id*. Here ███████ was asked to voluntarily cooperate with SEC requests for information.  He was served with a subpoena only because his counsel requested it – to hold that the subpoena constitutes a "demand" would allow ███████ to manufacture coverage.

The subpoena to ███████ also is not a Claim because it does not allege a "Wrongful Act" against him.  The subpoena was served in connection with a captioned matter

15

involving Patriarch Partners – not ██████████ – for Patriarch corporate documents.  AXIS MOL at 19; Response to AXIS SOF ¶ 73.  ██████████ had no further involvement with the SEC after his initial contact in the summer of 2011.  He was not named as a defendant in the enforcement action commenced by the SEC against Patriarch and Ms. Tilton, and was not a witness at the enforcement action trial.  Patriarch SOF ¶ 181.  ██████████ was not the target of the SEC's inquiries.  Patriarch SOF ¶ 180.  Courts examining this issue have ruled that there is no allegation of a Wrongful Act against an individual insured where the underlying matter was brought against the corporation and did not name the individual as a defendant.  *34th Ave. Apt. Corp. v. Nationwide Mut. Ins. Co.*, 283 A.D.2d 604, 605 (2d Dep't 2001) (complaint against apartment cooperative was not a claim covered by the entity's directors and officers endorsement to its errors and omissions claims-made policy because it was not a claim made against the directors and officers for a wrongful act "since no directors and officers were named as defendants in the underlying action."); *Medical Mutual*, 583 F.3d at 63 (administrative proceeding and civil action filed against company did not contain an allegation of a wrongful act against any individual insured directors and officers because the proceeding and the action were brought only against the corporation, and did not name any directors or officers as defendants).

██████████ was not a target of the SEC or a defendant in the enforcement action.  The subpoena to ██████████ is not a Claim because it contains no allegation of a Wrongful Act against ██████████ ██████████.  *34th Ave. Apt. Corp.*, 283 A.D.2d at 605; *Medical Mutual*, 583 F.3d at 63.

The subpoena to ██████████ also does not constitute a Claim because it does not seek non-monetary "relief."  The term "relief" is not defined in the policy.  Under its plain meaning, however, it means a demand in response to or seeking redress for a Wrongful Act.  *RSUI Indemn. Co. v. Desai*, 8:13-cv-2629-T-30TGW, 2014 U.S. Dist. LEXIS 122068, *12

(M.D. Fla. Sept. 2, 2014).[7]  The subpoena served on ███████ was not made in response to or

seeking redress for a Wrongful Act by ███████  *See id.* at *13 (holding that compulsory

document demand, such as a search warrant for documents, did not seek "relief" because it was

not made as redress in response to a wrongful act.  "At best,….[it] enabled law enforcement to

investigate whether a wrongful act had occurred.").  Accordingly, the subpoena to ███████

does not meet the definition of a Claim for this additional reason.

(b)     <u>No Claim Was Asserted in June, 2011</u>

Alternatively, AXIS argues that a Claim was made in June, 2011, when (i) the

SEC issued the non-public Order of Investigation (AXIS MOL at 15), or (ii) when ███████

counsel requested and received a copy of the Order of Investigation (*id.* at 17).  Like its other

arguments, these arguments also lack merit.

First, the issuance of the Order of Investigation does not constitute a Claim.  The

Order of Investigation is a non-public document.  It was not served on Patriarch.  To assert a

claim against an insured, you must serve that insured with the claim.  Indeed, the Second

Circuit's holding in *MBIA Inc. v. Federal Insurance Co.*, 652 F.3d 152, 160-61 (2d Cir. 2011), is

implicitly premised upon this basic principle.  *See* Patriarch MOL at 14.  In *MBIA*, the Second

Circuit ruled that a subpoena served on the target company was the "outward facing form" that

the investigation took, and as such, the subpoena was the Claim – not the order of investigation,

an internal non-public document, that was issued three years prior to the SEC's service of a

subpoena on the company.  *Id.* at 160-61.

---

[7] Copies of unreported decisions are attached at Appendix A unless they were cited previously in
Patriarch's Memorandum of Law in Support of its Motion for Summary Judgment (ECF No. 97), in
which cases copies were appended to that brief.

17

Furthermore, the Order of Investigation is not a Claim because it does not allege a Wrongful Act. Patriarch MOL at 13; *Office Depot v. Nat'l Union Fire Ins. Co.*, 734 F. Supp. 2d 1304, 1319-1320 (S.D. Fla. 2010); *MusclePharm Corp. v. Liberty Ins. Underwriters Inc.*, 15-cv-00555-REB-KMT, 2016 U.S. Dist. LEXIS 168698, *1 (D. Colo. Aug. 4, 2016); *see also*, *Employers' Fire Ins. Co. v. Promedica Health Sys.*, No. 12-3104, 524 F. App'x 241, 2013 U.S. App. LEXIS 8943, **1 (6th Cir. April 2013).

Recognizing that a claim cannot be asserted unless it is actually served on the insured, AXIS argues that even if the issuance of the Order of Investigation does not constitute a Claim, its request and receipt by ▇▇▇▇▇ counsel is a Claim. AXIS MOL at 17. AXIS argues that the Claim is "deemed first made" upon ▇▇▇▇▇ counsel's receipt of the Order of Investigation. *Id*. This argument is flawed for multiple reasons. First, AXIS argues incorrectly that written notice of the Order of Investigation to *any* Insured satisfies the definition of a Claim. *Id*. This is incorrect and is based on a distorted reading of the CNA Policy provision as to when a claim is deemed made – which, as discussed above, does not apply to the AXIS Policy. Moreover, AXIS's argument plainly disregards the definition of a Claim as well as the requirements in the Insuring Agreement that to constitute a Claim, it must be made against an Insured and allege a Wrongful Act by *that Insured*. *See* Al-Shibib Aff. Ex. 4, CNA Policy, § I.A at PP3350, and definition of "Claim" at PP3352. Because the Order of Investigation was not against ▇▇▇▇▇, did not contain an allegation of Wrongdoing by ▇▇▇▇▇ and was not served upon him, the receipt and review of the Order of Investigation by his counsel after she requested a copy is not a Claim.

AXIS's reliance on *National Stock Exchange v. Federal Insurance Co.*, 06C 1603, 2007 U.S Dist. LEXIS 23876 (N.D. Ill. Mar. 30, 2007), AXIS MOL at 15, as support for

the proposition that the mere issuance of an Order of Investigation is a Claim is misplaced. *National Stock Exchange* was decided under Illinois law and, therefore, the court was not bound by the Second Circuit's decision in *MBIA*, which makes clear that the issuance of a non-public order of investigation not served on the insured does not constitute a claim.  See *MBIA*, 652 F.3d at 160-61.

 Unlike *National Stock Exchange*, here, to conclude that the Order of Investigation is a Claim adopts a position that is contrary to the Second Circuit's binding decision in *MBIA*, 652 F.3d at 160-161, that "[t]he outward-facing form that the investigation takes is service of a subpoena" and that the subpoena served on the company and not the order of investigation constitutes the Claim.  Notably, the Second Circuit in *MBIA* so held despite the fact that the policy in that case defined a claim as a "formal or informal administrative or regulatory proceeding or inquiry <u>commenced by the filing of a</u> notice of charges, <u>formal or informal</u> <u>investigative order</u> or similar document."  *Id.* at 159 (emphasis added).

 Similarly, *Biochemics, Inc. v. AXIS Reinsurance Co.*, 83 F. Supp. 3d 405, 406 (D. Mass. 2015), a case upon which AXIS relies heavily (AXIS MOL at 15-17), also does not support AXIS's argument.  In that case, AXIS prevailed on the position that the claim was first made when the first subpoena was served on the company– not when the order of investigation was issued.  *Id.* at 406.  That is the same reasoning applied by the Second Circuit in *MBIA*, and it supports Patriarch's position here.  As discussed above, no subpoena was served upon Patriarch until the AXIS Policy period, and the subpoena requested by ████████cannot reasonably be considered a Claim.

 Moreover, unlike Patriarch's policy, the policy in *Biochemics* – which was not subject to New York law and therefore not bound by 11 N.Y.C.R.R. § 73.3(a) – did not contain a

New York Amendatory Endorsement providing that a claim is deemed made when notice is received by the insurance company, like the AXIS Policy does here.  In *Biochemics*, the policy provided that a claim is deemed made when the claim is first made against the insured.  *Id*. at 408.  There, that was – according to AXIS – when the insured was served with a subpoena – not when the order of investigation was issued.  *Id*. at 406.  Here, in accordance with *MBIA* and controlling New York law, the Claim was the SEC's Subpoena to Patriarch and was made when noticed to the insurers within the Policy Period.

Patriarch's interpretation that there was no claim in 2011 is reasonable.  *Gateway, Inc. v. Gulf Ins. Co.*, Case No. 10-cv-1720-WQH-JMA, 2011 U.S. Dist. LEXIS 91063, at *23 (S.D. Cal. Aug. 15, 2011) (court held that it was a reasonable interpretation of the policy to conclude that SEC subpoenas served on former employees who were not named as defendants in subsequent SEC lawsuits did not constitute claims).  To the extent that AXIS's competing interpretation also is deemed reasonable, an ambiguity exists that must be resolved in Patriarch's favor.  *Id.* (court held that ambiguity in policy interpretation had to be resolved in favor of insured); *Broad Street, LLC v. Gulf Ins. Co., 37 A.D.3d 126, 131 (1st Dep't 2006).

(c)   <u>No Claim Was Asserted in December, 2009</u>

Finally, AXIS's argument that a Claim was made in December, 2009, also is without merit.  It is based on the "when a claim is deemed made" clause in the CNA Policy.  In particular, AXIS contends that because Patriarch received Form 1662 as an attachment to the December, 2009, inquiry letter from the SEC requesting voluntary cooperation, this somehow constitutes a Claim.  AXIS MOL at 17.  As discussed *supra*, that clause in the CNA Policy does not apply to the AXIS Policy and is contrary to controlling New York law.[8]

---

[8] Moreover, that clause does not negate the requirement that the definition of a Claim still must be satisfied, including that it contain an allegation of a Wrongful Act against an Insured.  Form 1662 is

C.   **PATRIARCH'S CLAIM IS NOT BARRED BY ANY "PENDING AND PRIOR" EXCLUSION**

AXIS argues that the Pending and Prior Claim exclusion in the AXIS Policy bars coverage for the SEC Subpoena because a "demand, suit or other proceeding…or order" was pending prior to July 31, 2011.  AXIS MOL at 18.  AXIS conspicuously ignores that Patriarch's Amended Complaint asserts a cause of action seeking declaratory relief that the pending and prior claims exclusion in the AXIS Binder controls the parties' contractual relationship – and not the pending and prior claims exclusion in the AXIS Policy – which was issued after the Claim was made.  *See* First Amended Complaint ¶ 45 (ECF No. 42).  Under New York law, the pending and prior provision in the binder controls.  *In re September 11th Liab. Ins. Coverage Cases*, 458 F. Supp. 2d 104, 115 (S.D.N.Y. 2006) ("When a loss occurs prior to issuance of a final policy, the binder in effect at the time of the loss governs."); *see* Patriarch MOL at 18-21.  The pending and prior claims exclusion in the AXIS Binder clearly applies only to pending and prior claims.  *See* Patriarch MOL at 18-21.  The binder identified the exclusion only as "Pending & Prior Claim Date Endorsement."  Patriarch SOF ¶ 46.  Patriarch's in-house counsel, who reviewed the AXIS Binder, reasonably understood the exclusion to apply only to pending or prior claims and not more broadly to "other matters" that did not constitute claims.  Patriarch SOF ¶¶ 66, 67.  If the provision in the binder is ambiguous as to whether it applied only to claims, any ambiguity must be construed against the insurance company because it drafted it.  *Crouse W. Holding Corp. v. Sphere Drake Ins. Co., PLC*, 248 A.D.2d 932, 932 (4th Dep't),

---

provided by the SEC in connection with both voluntary requests for information and compulsory demands.  Patriarch SOF ¶ 157.  Neither Form 1662 nor the December, 2009, inquiry letter contains an allegation of wrongdoing – and, in fact, the letter explicitly contains language disclaiming any such allegation.  Patriarch SOF ¶¶ 155-157, 202; Patriarch MOL at 16.  It would be nonsensical to interpret the CNA Policy as requiring an allegation of a Wrongful Act in order to trigger coverage (Al-Shibib Aff. Ex. 4, CNA Policy, definition of "Claim" at PP3352), and then eliminate that requirement in another clause, with respect to the issuance of an SEC Form 1662, which is issued routinely with requests for voluntary cooperation that may never lead to an allegation of wrongdoing.

*aff'd*, 707 N.E.2d 435 (1998) (quoting 1 Couch On Insurance 3d, § 13:6, at 13–18).  Thus, in accordance with the AXIS Binder, the pending and prior claims exclusion precludes coverage only for pending or prior Claims.  Here, because no prior Claim existed, *see supra*, Points III.B.3.a.-c., the exclusion does not bar coverage for the SEC Subpoena.

Even if the pending and prior claims exclusion in the AXIS Policy applied, as the drafter of that clause admitted, it should be interpreted as applying only to exclude Claims based on facts or circumstances alleged in pre-policy Claims.  *See* Patriarch MOL at 20-21.  Moreover, even if the exclusion in the AXIS Policy applied in the manner proposed by AXIS, there was no prior demand, suit, proceeding, or order ***against*** Patriarch because prior to the coverage period Patriarch only had received requests for voluntary cooperation, and there had been no allegations or actions "against" Patriarch or any other Insured.

*Weaver v. AXIS Surplus Ins. Co*., Case No. 14-4180-cv, 639 F. App'x 764, 767, 2016 U.S. App. LEXIS 4199, *5 (2d Cir. March 7, 2016), an unpublished decision upon which AXIS relies, is clearly distinguishable.  AXIS MOL at 18-19.  In that case, the demand was a letter from a regulatory authority "asking" the company "pursuant to its 'authority to investigate and take action against anyone who violates' the [Maryland Business Opportunities Sales] Act," to "acknowledge in writing that it will immediately cease" certain business practices.  *Weaver*, 639 F. App'x at 766.  The demand went on to say that "failure to respond may result in more formal legal action."  *Id.*  In sharp contrast, the SEC's communications with Patriarch before February of 2012 sought only voluntary cooperation and made clear that the SEC requests "should not be construed as an indication by the Commission or its staff that any violations of law have occurred, or as a reflection upon any person, entity, or security."  Al-Shibib Aff. Ex. 34 at PP0010, *see also* Ex. 35 at PP0023, Ex. 36 at PP3028, Ex. 37 at PP0028.  Likewise, the SEC's

request for voluntary cooperation from █████████ and its issuance of a private Order of

Investigation, which was not served on Patriarch, do not come close to the direct threats and

demands served upon the target of the investigation in *Weaver*. And, as previously stated, ████

██████ requested the subpoena that the SEC issued to him. Thus, there was no prior demand,

suit, proceeding or order against Patriarch (or any other Insured). For all the reasons stated,

AXIS has not met its burden of proving that this exclusion bars coverage for the Claim.

### D.   PATRIARCH'S CLAIM IS NOT BARRED UNDER THE WARRANTY

AXIS also argues that the Warranty provided by Lynn Tilton that she[9] was not

aware of any facts or circumstances reasonably likely to result in a claim under the AXIS Policy,

acts as a bar to coverage. AXIS's argument once again is wrong. The warranty only applies to

circumstances that would reasonably be expected to result in Claims that exceed $20 million and

reach the AXIS coverage layer. *See* Patriarch MOL at 21-23; Patriarch SOF ¶¶ 111, 113, 125,

135, 139. AXIS does not dispute this in its memorandum of law, and indeed its own underwriter

conceded the point. Patriarch SOF ¶ 137.

AXIS ignores the actual language of the Warranty (as pertaining to claims in

excess of $20 million) and instead argues that it applies allegedly because there already was a

claim within the meaning of the CNA Policy as of the Warranty's effective date.[10] AXIS MOL

at 22. As explained above, there was no such claim.

---

[9] The warranty was provided by Ms. Tilton on behalf of Patriarch's directors and officers. Ms. Tilton testified at her deposition that she is the only officer and director of Patriarch. Al-Shibib Aff. II Ex. 3 at 166-167.

[10] AXIS argues that the Warranty should be interpreted under an objective standard. AXIS MOL at 21. Such prior knowledge exclusions containing similar language, however, are interpreted under a hybrid subjective-objective standard. *See Quanta Lines Ins. Co. v. Investors Capital Corp.*, 06 Civ. 4624 (PKL), 2009 U.S. Dist. LEXIS 117689, at *48 (S.D.N.Y. Dec. 17, 2009), *aff'd sub nom*, *Quanta Specialty Lines Ins. Co. v. Investors Capital Corp.*, 403 F. App'x. 530 (2d Cir. 2010). Under this mixed standard, the Court must first determine whether the insured had actual knowledge of the relevant facts, and second,

Moreover, even if AXIS argues a different interpretation of the warranty clause that it proffered, Patriarch's interpretation is reasonable and must be applied.  *See Seaboard Surety*, 64 N.Y.2d at 311; *Westview Assocs.*, 95 N.Y.2d. at 339; Patriarch MOL at 22-23, Patriarch SOF ¶¶ 106, 140-144.

AXIS quotes *University of Pittsburgh v. Lexington Insurance Co.*, 13-cv-335, 2016 U.S. Dist. LEXIS 170285, at *18 (S.D.N.Y. Dec. 8, 2016), out of context, suggesting incorrectly that Patriarch had an obligation to disclose its knowledge of the SEC inquiry at the time the AXIS Policy was underwritten.  AXIS MOL at 21.  *University of Pittsburgh*, however, does not stand for such a proposition – and indeed, it is well-settled law that a policyholder has no obligation to volunteer information.  *Vella v. Equitable Life Assur. Soc.*, 887 F.2d 388, 393 (2d Cir. 1989); *see also* Patriarch MOL at 24.  The quote cited by AXIS from the *University of Pittsburgh* decision pertained to a policyholder's obligation to provide timely, clear, and sufficient information to its carrier when providing notice of a claim or notice of circumstance to its insurer under an existing policy – and did not address the issue of whether a policyholder has an obligation to voluntarily disclose knowledge of circumstances to an insurer in connection with the underwriting of its insurance.

AXIS has offered no evidence that in August, 2011, it was reasonably likely that the SEC matter would result in a claim costing more than $20 million.[11]  Accordingly, AXIS has not satisfied its burden of demonstrating that the exclusion in the Warranty bars coverage.

---

whether a reasonable person in the insured's position would foresee that those facts might be the basis of a claim.  *Id*. at *47-*48.  Here, Ms. Tilton testified that she had no knowledge that the SEC had issued the Order of Investigation or that ███████ had been served with a subpoena – albeit at his request.  Ms. Tilton only was aware that the SEC had made certain voluntary requests to Patriarch and she believed that its informal inquiry would "go away."  Patriarch Memo of Law at 23.  Ms. Tilton therefore lacked the subjective knowledge – at the very least this presents an issue of fact.

[11] In a footnote, AXIS asks the court to interpret the Warranty in a way that it claims is consistent with the negotiating position taken by its underwriter that AXIS allegedly did not want to insure any known

24

## IV.    CONCLUSION

For all the foregoing reasons Patriarch respectfully requests that AXIS's Motion

for Partial Summary Judgment be denied in its entirety.

Dated: February 24, 2017          */s/ Luma Al-Shibib*
      New York, New York          Finley T. Harckham, Esq.
                                     Luma Al-Shibib, Esq.
                                     Anderson Kill P.C.
                                     1251 Avenue of the Americas
                                     New York, New York 10020
                                     Telephone:  212-278-1000
                                     fharckham@andersonkill.com
                                     lal-shibib@andersonkill.com
                                     *Attorneys for Plaintiff Patriarch Partners, LLC*

---

circumstances, and argues that Patriarch supposedly accepted that position.  AXIS MOL at 21, n.8.  If AXIS had intended to exclude coverage for any and all Claims arising from known circumstances, then it simply could have included a "prior acts" exclusion in the policy – instead of a "pending and prior claims" exclusion.  As the attorney at AXIS who drafted the "pending and prior claims" exclusion included in the AXIS Policy testified, AXIS uses "prior acts" exclusions when it wants to exclude any claims arising during the policy period from known circumstances that existed before policy inception. Patriarch SOF ¶¶ 87-89; Al-Shibib Aff. Ex. 54 at 95-98.  That AXIS attorney, Ms. Lebowitz, further testified that this is what makes prior acts exclusions different from pending and prior claims exclusions. The former (the "prior acts" exclusions) exclude claims resulting from any pre-inception wrongdoing – whether or not such wrongdoing was alleged in a prior claim – whereas the latter (the "pending and prior claims" exclusions) exclude claims only when they are based on the same facts as alleged in a pre-policy claim.  *Id.*  The fact that AXIS used a "pending and prior claims" exclusion instead of a "prior acts" exclusion demonstrates that it was not AXIS's intent to exclude claims resulting from any known circumstances.  Further, the language AXIS itself offered plainly and unambiguously applied only to claims which were likely to exceed $20 million.  In any event, Patriarch did not agree with AXIS's position that the Warranty should be executed in the form of the original draft.  Patriarch SOF ¶¶ 123-137.  Rather, Patriarch replied by redrafting the exclusion section of the Warranty to make perfectly clear that the Warranty related only to claims exceeding $20 million, and AXIS accepted that change. *Id.* at ¶¶ 128-132.